Dear Mr. Keyes:
This official opinion is in response to your request for rulings on the following questions:
 "1. Should revenue generated by various auxiliary enterprises operated by the Department of Mental Health, such as commissaries, canteens, and work activities centers, be deposited into the state treasury and credited to the general revenue fund?
 "2. Should the expenditure of money received from such auxiliary enterprises be controlled by the legislature through the appropriations process?
 "3. Is it proper for the superintendent of a mental health facility to permit a not-for-profit corporation to operate a commissary or canteen at a mental health facility?"
According to the facts that you have presented in regards to your first question, some of the facilities of the Department of Mental Health operate commissaries, canteens, and work activity centers. The profits derived from the activities have been deposited into a special account maintained by the Department of Mental Health.[1]
We are unable to find legal authority for the Department of Mental Health to maintain such an account. Rather, state constitutional and statutory authority requires that revenue received by the State and its agencies shall go into the state treasury. Article III, Sec. 36, and Article IV, Sec. 15, Constitution of Missouri; § 33.080, RSMo 1969.
Subsection 2 of § 136.010, RSMo 1969, provides that all money payable to the State shall be promptly transmitted to the Division of Collection of the Department of Revenue. Although certain exceptions are enumerated, there is no exception for revenue generated by Department of Mental Health facilities. After recording receipts of the money, the State Collector of Revenue shall deposit the money with the State Treasurer pursuant to § 136.110, RSMo 1969.
Thus, the revenue generated by various facilities of the Department of Mental Health is to be paid to the Division of Collection of the Department of Revenue. From there, the State Collector of Revenue is to deposit the money with the State Treasurer to the credit of the general revenue fund.
2.
Your second question involves the control of the expenditure of revenue generated by such activities. From the facts that you have presented, it appears that the profits have been placed in a special account and spent by the officials of the Department without authorization from the state legislature through the appropriation process.
Article III, Sec. 36, of the Constitution of Missouri, provides as follows:
 "All revenue collected and money received by the state shall go into the treasury and the general assembly shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in pursuance of appropriations made by law. All appropriations of money by successive general assemblies shall be made in the following order:
* * *
 Fifth: For the support of eleemosynary and other state institutions."
In Article IV, Sec. 15, of the Constitution of Missouri the duties of the State Treasurer are described. He is to deposit and hold all moneys in the state treasury to the credit of the various funds to which they belong and disburse them only as provided by law. Furthermore, Article IV, Sec. 28, of the Constitution of Missouri, specifies the manner in which money may be expended from the state treasury as follows:
 "No money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law, nor shall any obligation for that payment of money be incurred unless the commissioner of administration certifies it for payment and certifies that the expenditure is within the purpose as directed by the general assembly of the appropriation and that there is in the appropriation an unencumbered balance sufficient to pay it. At the time of issuance each such certification shall be entered on the general accounting books as an encumbrance on the appropriation. No appropriation shall confer authority to incur an obligation after the termination of the fiscal period to which it relates, and every appropriation shall expire six months after the end of the period for which made."
Accordingly, § 33.080, RSMo 1969, requires that money placed in the state treasury "shall be subject to appropriation by the general assembly." Furthermore, § 30.170, RSMo 1969, provides that the State Treasurer shall "disburse the state moneys upon warrants drawn on the treasury according to law."
Besides not finding any legal authority for permitting the establishment of a separate account for the placement of such profits, we also do not find any legal authority for allowing the officials of the Department to expend the money they place in the special account. The revenue thus generated by the Department should be forwarded to the Division of Collection of the Department of Revenue for placement in the state treasury to the credit of the general revenue fund. The money may then only be spent from the general revenue fund in accordance with appropriations made by the legislature.
3.
Your third question seeks an opinion on the propriety of a superintendent of a mental health facility permitting a not-for-profit corporation to operate a commissary or canteen on facility premises. Although we can find no express statutory or constitutional authorization for allowing such services to be provided on the grounds of a mental health facility, it is our opinion that allowing such entities to operate commissaries or canteens in mental health facilities for the benefit of patients falls within the purposes and powers of the director of the Department and the various superintendents and regional center directors.
The Department of Mental Health was created by ArticleIV, Sec. 12, of the Constitution of Missouri, and the Omnibus Reorganization Act of 1974, Appendix B, Sec. 9, RSMo 1975 Supp. Article IV, Sec. 37 (a), of the Constitution, generally establishes the duties and powers of the Department as follows:
 "The department of mental health shall be in charge of a director who shall be appointed by the commission, as provided by law, and by and with the advice and consent of the senate. The department shall provide treatment, care, education and training for persons suffering from mental illness or retardation, shall have administrative control of the state hospitals and other institutions and centers established for these purposes and shall administer such other programs as provided by law."
In similar language found in subsection 1 of § 202.020, RSMo 1969, the Department has the duty to "provide appropriate . . .care and treatment, examination report, education and training of persons suffering from mental illness or mental retardation."
In order to carry out the purposes of the Department as enumerated in the Constitution and the statutes, the superintendents of the facilities are to have "charge, control, and management" of the entire facilities. Section 202.050 RSMo (as amended by S.B. 653, 1978). This section which outlines the duties of the superintendents confers broad authority for them to exercise in administering their facilities subject to the directives of the department director. The superintendents are, therefore, vested with high degrees of discretion in order to provide "treatment, care, education and training" for the patients residing in and served by their facilities. Art. IV, Sec. 37 (a), Constitution of Missouri.
In Attorney General's opinion letter No. 39, Ulett, March 23, 1970, a canteen operated by an independent, not-for-profit corporation on the premises of the Farmington State Hospital was determined to be exempt from the sales tax law. The writer of the opinion noted as follows about the purposes that a canteen may serve:
 "Basically the purpose of the canteen is to make available certain common necessary items for purchase by the patients or families visiting the patients. All of the proceeds are then used for recreational and rehabilitation purposes. Operation of the canteen also serves as a rehabilitation function."
Services provided by volunteer individuals and organizations have traditionally been within the purview of operating public hospitals. Volunteers at the various facilities of the Department of Mental Health offer a wide range of services such as assisting patients with letter writing, transporting patients to and from community events, and buying personal items for the patients.
It is a logical extension of allowing individual persons to serve as volunteers to permitting and supervising not-for-profit corporations to provide certain services to the patients of the Department of Mental Health at minimum costs to the State.
Canteens and commissaries operated by these not-for-profit corporations serve the treatment, care, education, and training purposes for persons suffering from mental illness or retardation. The patients may purchase their own items in the canteens rather than having volunteers purchase them outside of the facility.
Furthermore, besides having such items as candy bars, shaving gear, and soft drinks available to purchase thereby making institutional living a degree more personally acceptable, the canteens and commissaries can provide genuine opportunities for the patients to make personal decisions at a time when and in a place where such decisions are relatively uncommon. This opportunity for the patients to utilize independent discretion occurs at a time and place which, of necessity, emphasizes dependence.
Additionally, the canteens and commissaries offer the patients the opportunity to interact with persons other than those on their wards. Moreover, patients may work in the canteens in order to aid in their rehabilitation.
Thus, not-for-profit corporations which operate canteens or commissaries on the premises of Department of Mental Health facilities provide positive benefits for the patients on a scale greater than but similar to services offered by individual volunteers.
As a condition of being allowed by the superintendent to operate on the premises, the not-for-profit corporations must be required to utilize their profits to serve the patients. Equipment and supplies may be purchased with the profits and contributed directly to the facilities. Money derived from the profits and contributed for the general patient welfare at a certain facility shall be paid to the director of the Department for placement in the state treasury in the "mental health trust fund" in accordance with § 202.660, RSMo 1969. The money in this fund is to be appropriated by the legislature for the purposes stated for which the money was given.
Thus, a superintendent may permit a not-for-profit corporation to operate a commissary or canteen at his mental health facility.
CONCLUSION
Therefore, it is the opinion of this office as follows:
1. Revenue generated by activities of facilities of the Department of Mental Health, such as the operation of commissaries, canteens, and work activity centers, should be deposited into the state treasury and credited to the general revenue fund.
2. The expenditure of money received from such activities should be controlled by the legislature through the appropriations process.
3. Subject to the directions of the director of the Department of Mental Health, a superintendent of a mental health facility may permit a not-for-profit corporation to operate a commissary or cafeteria on the premises for the benefit of the facility patients.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Reginald H. Turnbull.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosure: Op. No. 39, 3/23/70 Ulett
[1] In preparing this opinion, we disregarded facts you provided which were not pertinent to the questions you presented.